IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| BRENDA FILES § | |
| § | |
| vs. § | Civil Action No.: |
| § | |
| HARTFORD LIFE AND ACCIDENT § | |
| INSURANCE COMPANY § | |

## COMPLAINT

BRENDA FILES, Plaintiff, files this Complaint asserting causes of action in law and equity for relief against Hartford Life and Accident Insurance Company, Defendant.

### I.   PARTIES

1. Plaintiff is a resident citizen of Houston, Texas and resides in the Southern District of Texas. Plaintiff also worked at all times relevant hereto in Houston, Texas.

2. Hartford Life and Accident Insurance Company ("Hartford") is a domestic or foreign insurance company licensed to do business and doing business in the state of Texas and can be served with process by serving its registered agent, CT Corporation, 1999 Bryan St., Suite 900, Dallas, TX 75201, or wherever it may be found.

### II.   JURISDICTION AND VENUE

3. This Court has subject-matter jurisdiction over this action under 29 U.S.C. §§1132(e)(1) and 1132(f). This action is brought pursuant to 29 U.S.C. §1132(a)(1)(B) as it seeks benefits claimed to be due under an employee welfare benefit plan and is brought pursuant to the Employee Retirement Income Security Act (ERISA). Venue is proper in this district pursuant to 29 U.S.C. § 1132(e)(2). All

required pre-litigation appeals have been exhausted prior to the filing of this action thus making this claim ripe for judicial review and adjudication.

### III.  STATEMENT OF FACTS

4. Brenda Files, currently age 59, sues to recover long-term disability benefits under a group long-term disability insurance policy issued on October 1, 2007 and amended thereafter on various occasions by Hartford to Plaintiff's employer, Conestoga Supply Corporation (Policy No. GLT-857997) for the benefit of Conestoga's employees (a true and accurate copy of the Plan/Certificate of Insurance ("Policy").

5. Files ceased work as an accountant in Houston, Texas in January of 2013. She had contracted a serious and debilitating lung infection leaving her oxygen dependent and resulting in a diagnosis of Chronic Obstructive Pulmonary Disease. That condition was called "mycobacterium avium-intracellular complex". She applied for and was promptly granted Social Security Disability benefits. Subsequently she applied for and was awarded Long Term Disability (LTD) benefits by Hartford. The date of her disability was January 22, 2013. Hartford's initial assessment of Brenda Files' functionality was that she was "oxygen dependent" with a recurrent condition, and that return to work (RTW) was not likely. After a 90-day elimination period commencing on the first day of absence, Files was eligible to receive a gross monthly disability benefit amount of $4,749.68. After reductions for Other Income Benefits, the net monthly LTD benefit was $2,748.68. Hartford promptly began paying Files her monthly benefit.

6. Files was eligible to receive LTD benefits until she reached her normal retirement age of 65 according to the Policy's "Maximum Duration of Benefits Table" and so long as she remained disabled. Since Files condition did not appear to be curable and was "recurrent", Hartford presumably anticipated paying her benefits until 2027 when she would reach 65.

7. Files met the definition of "disability" contained in the Policy. That definition is as follows:

   **Disability or Disabled** means You are prevented from performing one or more of the Essential Duties of:

   1) Your Occupation during the Elimination Period;
   2) Your Occupation, for the 2 year(s) following the Elimination Period; and as a result Your Current Monthly Earnings are less than 80% of Your Indexed Pre-disability Earnings; and
   3) after that, Any Occupation.

8. During the first 2 years on disability, Files condition deteriorated. That resulted in Files being place on a list of candidates for a lung transplant. On April 22, 2015 her status under the Policy also changed from a disability from her own "Occupation" to disabled from "Any Occupation". This transition was what Hartford referred to as the Test Change Date. From this point forward her disability would be measured by her functional capacity to perform "Any Occupation" as defined in the Policy.

9. In May of 2015, Files successfully underwent bilateral lung transplant surgery. Following that surgery, Hartford reported "given [the] severe symptoms and

effects of the transplant, it is reasonable that [Files] would not be reliable in any [occupation] and would continue to be disabled under the policy."

10. On October 30, 2016, suffered a significant injury. Files fell while at home and fractured her left hip. She was in her back yard, became dizzy and fell resulting in the fracture. Recovery from the fracture was delayed because of the host of anti-rejection drugs taken for the lung transplant.

11. On November 6, 2017, Hartford advised Files that her LTD benefits were being terminated as of November 2, 2017. Hartford had determined she no longer met the Policy definition for disability. This termination was erroneous in light of credible evidence of Files continued to be disabled from engaging in gainful, full time employment.

12. Files timely appealed that determination. She provided Hartford with additional medical records along with other evidence that rebutted the evidence on which Hartford relied in terminating benefits. Included was the medical opinion of her pulmonologist on her functionality. That opinion had been specifically requested before the termination of her benefits. Her pulmonologist opined that Files lacked the functionality needed for Sedentary or Light Work. Nevertheless, Hartford upheld its termination decision and denied Plaintiff's appeal. In doing so, it relied significantly on the opinion of a paper reviewer. That reviewer was hired by a medical review service frequently used by Hartford called PDA. That reviewer rejected the favorable report of Files' pulmonologist who opined Files not able to perform employment in a sedentary or light work capacity on a full time or part

time basis. Hartford's paper reviewer claimed the pulmonologist's opinions were not supported by any "objective findings."

13. The evidence submitted to Hartford both before the termination of benefit payments and during the appeal of that termination decision demonstrated Plaintiff has been and remained disabled under the terms of the Policy. The termination of LTD benefits payments to Brenda Files was contrary to the evidence, was without evidentiary support, and had no basis in fact or law.

## IV. CLAIMS & CAUSES OF ACTION

14. The Group Long Term Disability Plan for Employees of Conestoga Supply Corporation Plan is governed by ERISA. 29 U.S.C. §1001, *et. seq*. Conestoga Supply is the Plan Sponsor and Plan Administrator. Hartford is the insurer and a named fiduciary under the Plan.

15. As Plan fiduciaries, Hartford and the Plan are obligated to handle claims for the benefit of the Plan and Plan beneficiaries, and to deliver the benefits promised in the Plan. They are also obligated as fiduciaries to conduct their investigation of a claim in a fair, objective and evenhanded manner. Hartford, the fiduciary, must not to put its interest before that of its insured.

16. Hartford's adjustment of the Files claim was instead biased and outcome oriented. This was partly reflected by its denial of the Files claim, even after being presented with the specific evidence and opinions of her functionality it requested. It is also evidenced by Hartford's complete failure to address Ms. Files' functionality by having her undergo a functional capacity examination or an independent medical

exam that would provide objective evidence of her restrictions and limitations. Hartford had the right to require its insured's attendance at either.

17. The biased and outcome nature of Hartford's adjustment and termination of the File claim was also revealed by its complete failure, as a fiduciary, to simply and clearly disclose to it's insured the specific evidence or other information needed in order to make a rational decision on her continuing disability.

18. On information and belief, Hartford's adjustment and adjudication of the Files claim changed sometime in 2016. Hartford embarked upon a program designed to terminate the claim of Brenda Files. Continuing to pay benefits until the end of the policy period in 2027 impacted Hartford's profitability. Terminating a long term claim sooner released monies reserved for that claim back to profitable revenue. This was part of a pattern of conduct followed by Hartford. It thus resorted to various techniques and devices to accomplish that objective. One of those devices was to reclassify and segment claims like the Files claim for closer and more aggressive scrutiny. For example, Hartford reclassified Files claim from a CAR 4 to a CAR 1 and began to give her claim greater scrutiny. Rather than find a basis coverage and continued payment of benefits, Hartford personnel were incentivized looked for a reason to terminate the claim under this scheme. This too was part of a pattern and practice for Hartford to place its financial interest before that of its insured.

19. Hartford's denial was made without substantial supporting evidence. Its decision to terminate the Files claim was instead based upon rank speculation and

guesswork. Hartford's denial decision was *de novo* wrong. Alternatively, it was arbitrary and capricious.

20. Hartford's termination of the Files claim breached the terms of the Policy. This breach was in violation of 29 U.S.C. §1132(a)(1)(B), entitling Files to the past due LTD policy benefits to which she is entitled, along with pre-judgment interest on the amounts due and unpaid, and reinstatement on claim, all for which Brenda Files now sues.

## V. STANDARD OF REVIEW

21. The default standard of review for denial of a benefit claim is *de novo*. Where the Policy confers discretion on the Claims Administrator, an abuse of discretion standard of review may apply.

22. The Policy may contain a discretionary clause or language Defendant may contend affords it discretion to determine eligibility for benefits, to interpret the Policy, and determine the facts. Defendant's denial under this standard of review, if any, was an abuse of discretion. It was arbitrary and capricious.

23. If discretion applies, the Court should afford Hartford less deference considering its financial conflict of interest. Hartford's conflict of interest is both structural and actual. Its structural conflict results from its dual role as the adjudicator of Ms. Files' claim and as the potential payor of that claim.

24. Hartford's actual financial conflict is revealed in the policies, practices, and procedures influencing and motivating claim delays and denials for financial gain.

Hartford's financial conflict is also revealed in the high return gained from the delay in payment or denial of claims.

25. Additionally, Hartford failed to comply with its fiduciary obligations under ERISA to employ "higher-than-marketplace quality standards"[1] in the administration of Brenda Files' claim.

26. Each of these grounds, on information and belief, was a motive to terminate Ms. Files' claim, along with the delay in payment or denial of claims of other Hartford policyholders and claimants.

27. In light of its financial conflict, Hartford should be given little or no discretion in its claim decision.

28. Alternatively, the standard of review of this claim should be *de novo,* affording Hartford no discretion in its interpretation of the terms of the Policy or in its factual determinations. Both factual conclusions and legal determinations are reviewed *de novo* by the Court. *Ariana v. Humana Health Plan of Texas, Inc.*, 884 F.3d 246 (5th Cir. 2018).

29. The Policy was delivered in Texas and is subject to the laws of that jurisdiction. Accordingly, Texas law applies under the ERISA savings clause, 29 U.S.C. § 1144(b)(2)(A). Texas has banned the use of discretionary clauses in insurance policies issued in this state. TEX. INS. CODE §1701.062; 28 Tex. ADMIN. CODE §3.1202. Accordingly, review of Ms. Files' claim and Hartford's claims handling

---

[1] *Metro. Life Ins. Co. v. Glenn,* 554 U.S. 105, 115 (2008) (citing disability plan administrator's fiduciary obligations under ERISA)

conduct, both in its interpretation of terms of the Policy, and in their determination of the facts, should be *de novo*.

## VI. DAMAGES AND ATTORNEY'S FEES

30. As a result of the foregoing, Ms. Files is entitled to an award of the full benefits from November 1, 2017 to the present to which she is entitled, prejudgment interest on all overdue payments pursuant to either 29 U.S.C. §§1132(a)(1)(B) of 1132(a)(3), and an award of attorneys' fees and costs pursuant to 29 U.S.C. §1132(g). Ms. Files is further entitled to be reinstated as disabled under the Policy.

## VII. PRAYER

WHEREFORE, Plaintiff prays for the following relief:

A. That the Court enter judgment in Plaintiff's favor and against Defendant and that the Court order the Defendant to pay all LTD benefits owed to Plaintiff in an amount equal to the contractual amount of benefits to which she is entitled;

B. That the Court order the Defendant to pay Plaintiff prejudgment interest at an appropriate rate of interest on all benefits that accrued prior to the date of judgment;

C. That the Court reinstate Plaintiff on claim under the Policy;

D. That the Court award Plaintiff her attorney's fees pursuant to 29 U.S.C. § 1132(g); and

E. That Plaintiff recover any and all other relief to which she may be entitled, as well as the costs of suit.

Respectfully submitted,

BERG PLUMMER JOHNSON & RAVAL, LLP

By: /s/James C. Plummer
James C. Plummer (jplummer@bergplummer.com)
TBN: 16075700
FedID: 3692
3700 Buffalo Speedway, Suite 1150
Houston, Texas 77098
713-526-0200 (tel)
832-615-2665 (fax)

**Attorneys for Plaintiff Brenda Files**